**P. V. MURRAY, Appellant,**

v.

**The DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, a corporation, Appellee.**

**No. 5164.**

United States Court of Appeals
Tenth Circuit.

Jan. 11, 1956.

C. C. Patterson, Ogden, Utah (Patterson & Kunz, Ogden, Utah, on the brief). for appellant.

Clifford L. Ashton, Salt Lake City, Utah (S. N. Cornwall and Donald E. Schwinn, Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from a judgment on a directed verdict for the defendant railroad, entered at the conclusion of plaintiff's evidence, in a personal injury action brought by Murray, an employee of the railroad, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

Murray, a switch-foreman for the appellee railroad in Durango, Colorado, was injured while engaged in a switching movement during the night shift. The undisputed evidence shows that in the switching operations, some cars were uncoupled and propelled upward onto a hold track. Murray attempted to scotch the detached cars before they started back downgrade by placing a "two-by-four" between the wheel and the rail. But by the time he had applied the "two-by-four" the momentum of the cars overran the block. In attempting to move out of the way of the returning cars he stepped backward, tripped over a "two-

by-four" lying at the side of the track, and fell against a rebounding car attached to the engine. There was evidence to the effect that the Durango yard where Murray was employed was a terminal point where the volume of business had for more than twenty years required only a single eight-hour day shift except during certain rush periods. Early in 1954, however, a short time before appellant sustained his injuries, defendant's officers ordered the switching operations to be performed during a night shift from 10:30 P.M. to 6:30 A.M. And Murray was also instructed to change the area of switching operations for car cleaning purposes from a straight, level track to an area where the track was either on an S-curve or 1% to 2% grade. When the switching operations were changed from the day to the night shift without the installation of lights of any kind, and to an upgraded area, protests of the creation of hazardous switching conditions were made to the defendant carrier by the appellant and an officer of the Switchmen's Union to which appellant belonged. These protests were ignored. Murray testified that although he carried the usual switchman's lantern during the night switching operations, enabling him to see numbers on the cars and "two-by-fours" on the ground, it was impossible for him to carry the lantern while he was blocking the cars since the lantern light blinded him as he stooped to apply the block; that because of improper lighting conditions in the rail yard he was thus unable to judge the exact time when the cars had reached the top of their forward motion before returning downgrade, and the cars gained enough momentum to roll over the block, forcing him to hurriedly get out of the way of moving cars; and that he did not see the "two-by-four" as he stepped backward in the darkness.

We think this evidence, when considered most favorably to the plaintiff, was susceptible of an inference of negligence for failure to provide a reasonably safe place in which to work when measured by standards of due care commensurate to the dangers of the business. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610; Long v. Union Pacific R. Co., 10 Cir., 192 F.2d 788; Butz v. Union Pacific R. Co., Utah, 1951, 233 P.2d 332. The case is accordingly reversed and remanded with directions to submit the issue of negligence to a jury.