**Louis R. DEL VECCHIO, Jr.,**
Appellant,

v.

**The PENNSYLVANIA RAILROAD COMPANY.**

**No. 11766.**

United States Court of Appeals
Third Circuit.

Argued April 10, 1956.
Decided May 15, 1956.

McLAUGHLIN, Circuit Judge.

Plaintiff-appellant was badly hurt as the result of an occupational accident. He sued appellee as his employer under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60. On the primary question of whether he was such employee, the district judge ruled he was not and directed a verdict in favor of defendant. Plaintiff appeals.

Appellant was hired as a brakeman in 1951 by Northern Contracting Company, a Delaware corporation. That company, under a written contract with appellee, handled coal for the latter at its Greenwich Pier, Philadelphia, Pennsylvania. The coal was transported to the pier in railroad cars. Thereafter Northern removed it from the cars and loaded it for transshipment into vessels docked at the pier. In the fall of 1951, appellant became a signalman working at the tipple of the coal dumping station on the pier. On November 15, 1951, while so engaged, he was crushed between a coal car and the barrel of the tipple mechanism.

The agreement between Northern and the railroad is dated January 2, 1940. It was supplemented on July 6, 1946 and modified October 29, 1952. The supplement changed certain insurance features of the original.[1] The modification is merely referred to in an answer to an interrogatory and is not pertinent. The original agreement runs twelve printed pages. Its preamble states the reason for hiring the contractor is because of its experience and expert knowledge of the particular kind of work. The twelfth paragraph is important to the present problem. It reads:

"The work to be performed by the Contractor under this agreement is to be done promptly and adequately in all respects, and in the performance of such work the Contractor will furnish all labor and supervisory force of every kind and description. And it is expressly understood and

Harry R. Kozart, Philadelphia, Pa. (Harry A. Demar, Philadelphia, Pa., on the brief), for appellant.

Philip Price, Philadelphia, Pa. (Arthur E. Newbold, III, Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and STALEY, Circuit Judges.

---

1. While not too important on the issue of Northern's status, the insurance conditions in the original contract and more strongly as appearing in the supplemental agreement, do point to the independent entity of Northern.

agreed that the Contractor shall be and remain an original private and independent contractor, hereunder, and shall employ, pay from its own funds, and discharge all persons engaged in the performance of such work, and all such persons shall be and remain the sole employees of the Contractor, and subject to its exclusive authority, supervision, direction and control."

There is nothing in the agreement at all indicative of Northern being an instrumentality or sub-agent of appellee.

█ We agree that if the contract language is contrary to the true relationship between Northern and the railroad it of course does not govern. Cimorelli v. New York Central R. Co., 6 Cir., 1945, 148 F.2d 575, 578. Northern's status depends upon the facts.

Those facts are simple. Northern neither had nor has any connection with the railroad except under its contract. There is no interlocking directorate or stock ownership by appellee. There was close coordination between the railroad and Northern in the contract undertaking. The railroad would advise Northern that certain identified coal was to be loaded on a named vessel expected to be available at a stated time. Generally the coal as it arrived in cars was placed in the pier thaw house, where in cold weather it was thawed out. After that Northern was advised what tracks the cars were on and furnished with their identification marks and weights. Northern then took charge and moved the cars to the dumper where it loaded the coal into the designated vessel.[2]

The assistant agent for the railroad, in charge of his employer's coal business on the pier, was a witness for the plaintiff. He made it very clear that though he instructed Northern what coal to take and where to deliver it, he never had anything to do with the manner in which Northern's results were accomplished. At the time of the accident he occupied an office on the pier area in the same building wherein Northern's superintend, with whom he dealt, also had quarters. None of Northern's records give any fair inference that it was other than a self sufficient organization functioning entirely separate from the railroad. In connection with its work Northern used Pennsylvania equipment and made repairs to it. It cleaned the premises and maintained fire protection and watchmen. On one occasion when its men were not busy they painted the little office building which was owned by appellee and in which at the time, its superintendent had his office. These particulars and the others alluded to by appellant are not here inconsistent with the inescapable fact that Northern, during the period Mr. Del Vecchio suffered his injuries, was an independent contractor and associated with the railroad solely on that basis.

The decided cases sustain this view. The facts in Chicago, Rock Island & Pacific Ry. Co. v. Bond, 1916, 240 U.S. 449, 455, 456, 36 S.Ct. 403, 406, 60 L.Ed. 735, were quite similar to the situation before us. The court there held:

"There was, it is true, and necessarily, a certain direction to be given by the company, or rather, we should say, information given to Turner. But the manner of the work was under his control, to be done by him and those employed by him. He was responsible for its faithful performance and incurred the penalty of the instant termination of the contract for nonperformance.
\* \* \* \* \* \*

2. We are not concerned whether Northern was a common carrier in those operations as only the railroad is being sued in this action.

"The railroad company, therefore, did not retain the right to direct the manner in which the business should be done, as well as the results to be accomplished, or, in other words did not retain control not only of what should be done, but how it should be done."

The usual tests evidencing appellant's bona fide employment by Northern are all present. Northern selected him, hired him, paid him, could discharge him and directed and controlled his work. Stevenson v. Lake Terminal R. Co., 6 Cir., 1930, 42 F.2d 357. The cooperation and assistance furnished by the railroad helped enormously in the successful accomplishment of Northern's task but it was Northern who controlled the way it performed its job. Cf. Gaulden v. Southern Pacific Co., D.C.N.D.Cal. 1948, 78 F.Supp. 651, affirmed per curiam 9 Cir., 1949, 174 F.2d 1022. See also Dougall v. Spokane, P. & S. Ry. Co., 9 Cir., 1953, 207 F.2d 843, certiorari denied 347 U.S. 904, 74 S.Ct. 429, 98 L.Ed. 1063; Shaw v. Monessen Southwestern Ry. Co., 3 Cir., 1953, 200 F.2d 841; Docheney v. Pennsylvania R. Co., 3 Cir., 1932, 60 F.2d 808.

In the Cimorelli decision, supra, Pennsylvania R. Co. v. Barlion, 6 Cir., 1949, 172 F.2d 710, and Pennsylvania R. Co. v. Roth, 6 Cir., 1947, 163 F.2d 161, certiorari denied 332 U.S. 830, 68 S.Ct. 208, 92 L.Ed. 404, all of the contracts involved were cost plus and there was evidence that the railroads concerned exercised some actual control and supervision of the performance of the services. Those cases and others of the type conclude from the facts that the contractor was merely an adjunct of the railroad. Here the facts reveal that this contractor had an independent status and that appellant was its bona fide employee.

The judgment of the district court will be affirmed.