Margaret **HETMAN**, as Administratrix ad Prosequendum and as Administratrix of the Goods and Chattels, Rights and Credits which Were of Stephen Hetman, Deceased, Appellant,

v.

**FRUIT GROWERS EXPRESS COMPANY,**

v.

**RUBEL CORPORATION (Third-Party Defendant).**

No. 14814.

United States Court of Appeals Third Circuit.

Argued Jan. 5, 1965.

Decided June 15, 1965.

See also D.C., 200 F.Supp. 234.

948

Jacob Rassner, New York City (Samuel Cole, Jersey City, N. J., on the brief), for appellant.

William L. Dill, Jr., Stryker, Tams & Dill, Newark, N. J., for appellee-Fruit Growers Express Co.

William L. Dill, Jr., and James T. Clare, Newark, N. J., of counsel, Stryker, Tams & Dill, Newark, N. J., for defendant-respondent.

Before BIGGS, Chief Judge, and KALODNER and SMITH, Circuit Judges.

KALODNER, Circuit Judge.

Is the defendant, Fruit Growers Express Company, a "common carrier by railroad" within the meaning of the Federal Employers' Liability Act ("Act")?[1]

If it is, was the plaintiff's decedent, Stephen Hetman, its "employee" within the meaning of the Act at the time he sustained the injuries which led to this action?[2]

The District Court answered these questions in the negative and granted summary judgment in favor of the defendant on the basis of the following stated undisputed facts disclosed by the pleadings, deposition of the decedent, affidavits and exhibits.

On April 22, 1958, the decedent was injured while he was feeding ice into an ice crusher mounted on a truck[3]

---

1. 45 U.S.C.A. § 51 et seq.

2. Other points presented in the plaintiff's brief asserted under the laws of the State of New Jersey have been abandoned.

3. The truck was parked parallel to, and alongside, a railroad track in a railroad yard of the Pennsylvania Railroad in Jersey City, N.J.

In the operation in which the decedent and a fellow employee were engaged, it was necessary to crush into small pieces, cakes of ice forming the cargo of the truck, by means of a gasoline engine driven crusher affixed to the inner side of the body of the truck. The operation involved the placing of large pieces of ice into a vertical hopper, above the grinding mechanism of the crusher, by which they were normally fed by gravity into and through the throat of the hopper, where they were ground and crushed by a horizontally revolving cylinder with metal spokes protruding from the circumference of the cylinder, which shredded or reduced to small size the pieces of ice as they came between the revolving cylinder or base of the hopper.

owned and operated by his employer, Rubel Corporation, an independent contractor, in the course of "icing" a refrigerated freight car pursuant to a contract it had entered into with the defendant. Incorporated in 1920, the defendant is engaged in the business of furnishing its 13,900 refrigerator cars and their refrigeration, heat and other protective service to sixty-seven railroads. It also provides the service stated to refrigerator cars owned by others.[4] It engages independent contractors, such as Rubel to perform the service. It does not engage in the business of transporting cargo or passengers in intrastate or interstate commerce. It does not own any track, rolling stock, or motive power except that used and maintained in its own repair yards.

At the time here relevant it had outstanding 109,121 shares of stock owned by nineteen railroads. Its business has been independently operated, at all times, by its own officers and employees, free of control or direction by any of its railroad stockholders. Its board of directors does not interlock with the boards of its stockholders.

It charges a uniform rate to the railroads for the furnishing of its refrigerator cars. The rate is fixed by the Association of American Railroads.

At the time of the accident no employee of the defendant was present. The defendant had no control over the "icing" operation in which the decedent was employed nor did it attempt to exercise any control. The decedent was employed only by Rubel and was solely under Rubel's control.

On this appeal the plaintiff urges that (1) the defendant is a "common carrier by railroad" because it furnishes its refrigerator cars and servicing operations to common carriers by railroad and is wholly owned by railroads; (2) the "icing" service furnished by Rubel under its contract with the defendant was a non-delegable duty of the defendant, and since § 55 of the Act prohibits a "common carrier by railroad" from delegating its duties by contract, the decedent was, accordingly, an "employee" of the defendant within the meaning of the Act, and (3) the defendant breached its duty to provide the decedent with a "safe place to work" in violation of the Act.

■ We are of the opinion that the District Court correctly held that the defendant is not a "common carrier by railroad" within the meaning of the Act.

We need go no further than to cite Gaulden v. Southern Pac. Co., 78 F.Supp. 651 (N.D.Cal.1948), aff'd per cur. 174 F.2d 1022 (9 Cir. 1949), where it was held that the Pacific Fruit Express Company, which conducted a business similar in all critical aspects to that of the defendant, here, and which was also wholly owned by railroads, was not a "common carrier by railroad" within the meaning of the Act. It would serve no useful purpose to here restate what was so well said in Gaulden in its analysis and application of the Act or to make repetitious reference to the cases therein cited in support of the court's holding.

---

While attempting to insert or assist the movement of a piece of ice into the hopper, a rubber glove, which the decedent was wearing to protect his hands from the cold of the ice, was caught by one of the revolving sticks of the cylinder. His hand was drawn into the hopper and he suffered injuries which necessitated the amputation of one arm a short distance below the shoulder.

He thereafter made application for, and was awarded or received by voluntary payment, workmen's compensation from or on account of his employer, Rubel,

upon the basis of a permanent disability consisting of a hundred per cent of the left arm and two per cent of total disability neurological.

He died February 22, 1960, some twenty-two months after the accident. Alleging that his death was the result of this accident, the instant action was thereafter timely filed insofar as claims asserted under the FELA are concerned.

4. The refrigerator car which was being "iced" at the time of the accident was owned by the Western Fruit Express Company.

It should be noted that a similar result was reached in Moleton v. Union Pacific R. R. Co., 118 Utah 107, 219 P.2d 1080 (1950), cert. den. 340 U.S. 932, 71 S.Ct. 495, 95 L.Ed. 672 (1951).

Further, even assuming, arguendo, that the defendant is a "common carrier by railroad", we are of the opinion that the District Court correctly held that the decedent was not an "employee" of the defendant at the time he was injured, within the meaning of the Act.

It is the plaintiff's position that while the decedent was employed by Rubel, an independent contractor, he was, at the time of the accident, also an "employee" of the defendant "pro hac vice." Citing Sinkler v. Missouri Pacific Railroad Company, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958), she urges that the words "employee" and "employed" have no special significance, and they are not limited to describing persons working solely for a "common carrier by railroad". She says that the decedent, at the time of the accident, "was doing the work that defendant was legally bound to do as a common carrier and [which was] traditionally performed by railroad employees;" and that being so, he was within the protection of the Act.

The Act provides in relevant part in § 51 that:

"*Every common carrier by railroad* while engaging in * * * [interstate commerce] shall be liable in damages to any person suffering injury *while he is employed* by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such *employee.* * * *" (emphasis supplied).

and in § 55:

"Any contract, rule, regulation, or device whatsoever, the purpose or in-

tent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void. * * *"

In Robinson v. Baltimore & Ohio Railroad Company, 237 U.S. 84, 35 S.Ct. 491, 59 L.Ed. 849 (1915) where the meaning of "employee" was at issue, it was said (p. 94, 35 S.Ct. p. 494):

"* * * Congress used the words 'employee' and 'employed' in the statute in their natural sense, and intended to describe the conventional relation of employer and employee. It was well known that there were on interstate trains persons engaged in various services for other masters. Congress, familiar with this situation, did not use any appropriate expression which could be taken to indicate a purpose to include such persons among those to whom the railroad company was to be liable under the act." [5]

It was there held that a porter on a railroad car owned by the Pullman Company, who was "hired, directed, and paid" by Pullman, was not an "employee" of the railroad even though the Pullman car was part of an interstate train and the porter had regularly collected tickets for the railroad.

In Chicago, Rock Island & Pacific Railway Company v. Bond, 240 U.S. 449, 36 S.Ct. 403, 60 L.Ed. 735 (1916) one Turner, determined by the Court to be an "independent contractor", was hired by the railroad to remove coal from its cars to be placed in coal chutes for use on its engines. He was killed while walking along the railroad's track when a train backed into him and ran him down. It was held that there was no liability under the Act, regardless of "whether the services in which [Turner] was engaged were in interstate commerce", because "Turner was not an employee of

5. The continued vitality of this interpretation of the statute is evidenced by Baker v. Texas & Pacific Railway Co., 359 U.S. 227, 228, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959); Mazzucola v. Pennsylvania Railroad Company, 281 F.2d 267, 269, 91 A.L.R.2d 518 (3 Cir. 1960); Byrne v. Pennsylvania Railroad Company, 262 F.2d 906, 911, 912 (3 Cir. 1958), cert. den. 359 U.S. 960, 79 S.Ct. 798, 3 L.Ed.2d 766 (1959).

the company, but an independent contractor."

We had occasion to consider a similar situation in Del Vecchio v. Pennsylvania Railroad Company, 233 F.2d 2 (1956), cert. den. 352 U.S. 909, 77 S.Ct. 146, 1 L.Ed.2d 117. There, the Northern Contracting Company was engaged by the defendant to handle coal which had been brought to its railroad pier to be loaded onto waiting vessels, for transshipment. On our holding that Northern was an "independent contractor", recovery was denied under the Act to its employee injured while performing its work.

In Norman v. Spokane-Portland & Seattle Ry. Co., 101 F.Supp. 350 (D.Or. 1950), aff'd per cur. 192 F.2d 1020 (9 Cir. 1951), cert. den. 342 U.S. 945, 72 S.Ct. 559, 96 L.Ed. 703 (1952), the plaintiff, an employee of the Gilpin Construction Company, was injured while doing repair work on a railroad bridge and trestle. There, too, it was contended that the railroad had a nondelegable duty to do the work involved, and that, therefore, any workman who performed it came within the protection of the Act despite the fact that he was an employee of an independent contractor. In rejecting this contention it was said (p. 352):

> "Of the hundreds of cases which have been reviewed by the court, none suggests that an employee of a true independent contractor erecting or repairing a bridge on a right of way becomes an employee of the railroad company because the duty of construction and repair of such bridges cannot be delegated. *No case suggests that the employee of an independent contractor becomes an employee pro hac vice under such circumstances.* * * * [E]mployees of the contractor do not become employees of the railroad by any legal theory. This does not derogate from the duty of the railroad to construct and repair such structures. But the duty is not to plaintiff but to its passengers." emphasis supplied) [6]

In Kelly v. Delaware River Joint Commission, 85 F.Supp. 15 (E.D.Pa.1949) the plaintiff, an employee of J. I. Hass Co., Inc., an independent contractor, was injured while painting part of the structure overhanging the Philadelphia Transportation Company's right of way across the Delaware River Bridge connecting Philadelphia and Camden, New Jersey. It was contended that the plaintiff's employer was engaged in a joint enterprise with two common carriers by railroad and that therefore he was "employed" within the meaning of the Act. The Court, in granting the defendants' motion to dismiss, said (pp. 17–18):

> "Mere participation in interstate commerce or in assisting in the maintenance of a 'common carrier by railroad' does not make J. I. Hass Co., Inc., such a 'common carrier by railroad.' * * *
>
> There is no allegation that there was any employer-employee relationship between plaintiff and either of the two 'common carrier' defendants. No suit can be entertained against the 'common carrier' if the injury is sustained by an employee of an independent contractor."

■ The sum of the foregoing cases, and we have found none to the contrary, is that one who is employed by an independent contractor is not an "employee" of, or "employed" by, a "common carrier by railroad" merely because the activity in which he is engaged at the time of his injury is such that it could be characterized as an integral part of the railroad's business, or in the words of the present plaintiff, "work that defendant was legally bound to do as a common carrier and [which was] tradi-

---

6. A similar result was reached in Dougall v. Spokane, P. & S. Ry. Co., 207 F.2d 843 (9 Cir. 1953), cert. den. 347 U.S. 904, 74 S.Ct. 429, 98 L.Ed. 1063 (1954). There the plaintiff was injured while in the employ of an independent contractor engaged by the railroad to carry out certain maintenance activities on its roadway and right of way.

tionally performed by railroad employees."

This, too, must be said:—

Sinkler v. Missouri Pacific Railroad Co., supra, heavily relied on by the plaintiff, is inapposite. That case did not consider the question of who is an "employee" of the railroad for purposes of the Act, but rather was concerned with who are "agents" of the railroad for determining liability to one clearly an "employee". Baker v. Texas & Pacific Railway Co., 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959), decided after Sinkler, makes it abundantly clear that the interpretation of the words "employed" and "employee" found in Robinson v. Baltimore & Ohio Railroad Company, supra, and applied by its progeny, is still the law.

Since the facts in the instant case establish that the decedent was not an "employee" within the meaning of § 51 of the Act, § 55 is inapplicable here. Robinson v. Baltimore & Ohio Railroad Company, supra.

For the reasons stated the Order of the District Court entered January 13, 1964, dismissing the plaintiff's action, will be affirmed.

BIGGS, Chief Judge (concurring).

I concur in the view expressed in the majority opinion that Fruit Growers Express Company is not a "common carrier by railroad". Gaulden v. Southern Pac. Co., 78 F.Supp. 651 (N.D.Cal.1948), aff'd per curiam, 174 F.2d 1022 (9 Cir. 1949), is on all fours with the case at bar on this issue and was, I think, correctly decided. The opinion of the court could have stopped here for, with the decision of the court on this point, the case is at an end.

In respect to the second issue decided by this court that Hetman was not an employee of Fruit Growers at the time of the accident, I state that I do not understand the court's ruling to encroach upon our decision in Byrne v. Pennsylvania R. R., 262 F.2d 906 (1958), cert. denied, 359 U.S. 960, 79 S.Ct. 798, 3 L.Ed.

2d 766 (1959), for the decision in the cited case turned largely on the extent of the control exercised by the Railroad over Byrne, while in the case at bar it is neither alleged nor asserted that Fruit Growers exerted any measure of control over Hetman.