Percell TARBORO, Appellant,

v.

**READING COMPANY and E. W. Coslett & Sons, Inc.**

No. 16413.

United States Court of Appeals
Third Circuit.

Argued Dec. 5, 1967.

Decided June 19, 1968.

Rehearing Denied Aug. 19, 1968.

Avram G. Adler, Freedman, Borowsky & Lorry, Philadelphia, Pa., for appellant.

William J. McKinley, Jr., Swartz, Campbell & Detweiler, Philadelphia, Pa. (Victor L. Drexel, Pepper, Hamilton & Scheetz, Philadelphia, Pa., on the brief), for appellees.

Before KALODNER, GANEY and SEITZ, Circuit Judges.

OPINION OF THE COURT

KALODNER, Circuit Judge.

The District Court entered Judgment in favor of the defendants after granting their motions for a directed verdict [1] in the plaintiff's personal injury action under the Federal Employers' Liability Act [2] and this appeal followed.

Plaintiff, at the time of his injury on July 2, 1962, was employed as a coal

---

1. The motions were made pursuant to the provisions of Rule 50(a) of the Federal Rules of Civil Procedure at the close of the plaintiff's case.

2. 45 U.S.C.A. § 51 et seq.

shoveler by the defendant E. W. Coslett & Sons ("Coslett"), a freight handler and forwarder, then engaged in unloading coal hopper cars at a pier owned by the defendant Reading Company ("Reading"), pursuant to an existing contract.

Reading's motion was granted on the ground that "from the plaintiff's evidence the jury could not find that the plaintiff was at the time of his injury an employee of the defendant railroad within the meaning of the Federal Employers' Liability Act, or that the contract between the railroad and Coslett was void under Section 5 of that Act * * *" Coslett's motion was granted on the ground that "as the plaintiff has conceded, the jury could not find from the plaintiff's evidence that the defendant Coslett was at the time of the plaintiff's injury a common carrier by railroad within the meaning of the Federal Employers' Liability Act. * * *"

On this appeal plaintiff contends that (1) his evidence as to his employment by Reading was sufficient to present a jury question and that the District Court erred in holding to the contrary; and (2) plaintiff's evidence made out a *prima facie* case on the issue of negligence.

We do not reach the second contention in our disposition of this appeal.

At this juncture it must be noted that while plaintiff in his "Notice of Appeal" appealed from the Judgment in favor of Coslett, he "conceded" below[3] that the jury could not find from his evidence that Coslett was a common carrier within the meaning of the Federal Employers' Liability Act. Moreover, plaintiff has not here adverted, either in his brief or oral argument, to the entry of Judgment in Coslett's favor. Under these circumstances it must be concluded that plaintiff has abandoned his appeal inso-

far as the Judgment in favor of Coslett is concerned, and accordingly it will be affirmed.

Consideration of the question as to whether the District Court erred in holding that plaintiff's evidence as to his "employment" by Reading was insufficient to require submission to a jury must be prefaced by this statement of the critical facts presented by the record:

Coslett. as earlier stated, is a freight handler and forwarder and Reading is one of its many customers. Coslett has had a coal contract with Reading since 1943 for "The unloading at Pier 11 of anthracite and bituminous coal and coke from railroad cars to vessels", and "The trimming of cargo coal and coke and bunker coal in such vessels loading at Piers 11 and 18 as may be designated by the Manager of the Port Richmond Terminal or his duly authorized representative". The contract provides that Coslett is required "to furnish all labor required for the performance of the work", and Reading is to provide Coslett "free of charge" with "the shovels, trimming boards and candles required" in performing its work, and that Coslett may also use other Reading equipment on payment of "use" charges. The contract designates Coslett as an "independent contractor". It requires Coslett "to indemnify, protect and save harmless" Reading with respect to damages to its property and freight and "injuries" to any person, including employees "of either party". It further provides that Coslett is to employ and pay all persons engaged in the performance of its work, and that such persons should be regarded as its employees, subject "to its exclusive authority, supervision, direction and control", and right to discharge, and that Reading should pay Coslett for its services on a tonnage basis at specified rates.

3. Excerpt from transcript of testimony at page 317:
"Mr. Adler [counsel for plaintiff]: Your Honor, if I may, your Honor has used the words 'assented to dismissal.' I agree that with the arguments of Mr. Drexel that the evidence as entered by the plaintiff is not sufficient to establish that Coslett is a railroad. I don't know that I agree—
"The Court: Well, if you agree to that, isn't that the end of your case?
"Mr. Adler: Yes, your Honor."

The evidence established that Reading and Coslett are separately owned and operated corporate entities; their only relationship is contractual with respect to services to be rendered by Coslett to Reading in the handling of coal cargo; and they have no interlocking directors or officers.

The routine of the work performed by Coslett at Pier 11 at the time plaintiff was injured may be described as follows:

Reading employees moved coal hopper cars which were to be unloaded by Coslett's crew to a discharge point on Reading's tracks which was directly over a moving conveyor. Coslett employees would then take over. They would first place chocks under the wheels of the cars and then open their hatches so that the coal would fall through to the conveyor below. The "arms" of an overhead positioned "shaker" owned by Reading, but operated by Coslett employees, would then be attached to the middle sides of the car to be unloaded by Coslett employees and the "shaker" would shake the car so that its vibrations would accelerate the coal discharge process. At the same time a Coslett employee would get into the car with a broom and shovel to expedite the discharging operation.

While plaintiff was shoveling coal from a car which was being unloaded, his foot slipped just as he was bracing both feet against the sides of the car. He grabbed one of its sides and at that moment an arm of the shaker smashed down on his hand amputating part of his fingers and crushing the rest of his hand. Plaintiff's witnesses testified that the arms of the shaker had a tendency to "creep" from their position in the center sides of a car due to the car's vibration while being shaken and that it was this creeping which resulted in plaintiff's injury.

Coslett's work was being performed at the time of the accident by a crew of twelve of its employees supervised by its foreman Thomas. Reading personnel decided what cars were to be unloaded and when they were to be unloaded, but the work of unloading was under the sole control and direction of Coslett's foreman Thomas. Thomas hired and fired the members of his crew, and their wages were paid by Coslett. Reading's employees never gave any of Coslett's men any directions as to the manner in which the work of unloading was to be done. The only Reading personnel on Pier 11 during the unloading work was its checker and the car riders who brought and placed the hopper cars in position under the shaker. The duty of the checker was to keep a record as to which cars were unloaded and the tonnage in each.

The sum of plaintiff's contention is that its evidence presented a jury question as to plaintiff's employment by Reading by reason of the circumstances that Reading owned the "shaker" and the hand tools (brooms and shovels) used in the unloading operation; Reading had and exercised control with respect to which cars were to be unloaded and the time of their unloading, and finally that the work of unloading the cars was "the work of Reading Company" and that since plaintiff was engaged in that work he "was an employee of Reading".

Settled applicable principles relevant to plaintiff's contention may be stated as follows:

■ The primary factor to be considered in determining whether a plaintiff was employed by the defendant is whether the latter had the power to direct, control and supervise the plaintiff in the performance of his work at the time he was injured. Relevant factors to be considered are: who selected and engaged the plaintiff to do the work; who paid his wages for performing it; who had the power to terminate his employment; who furnished the tools with which the work was performed and the place of work. Ward v. Atlantic Coast Line Railroad Co., 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960).

■ While each case "must be decided on its peculiar facts and ordinarily no

one feature of the relationship is determinative", and the question of employment "contains factual elements such as to make it one for the jury under appropriate instructions as to the various relevant factors under law", the question may be taken from the jury "if reasonable men could not reach differing conclusions on the issue." Baker v. Texas & Pacific Railway Co., 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed.2d 756 (1959).

■ On review of the record we are of the opinion that the District Court did not err in granting a directed verdict in favor of Reading because "reasonable men could not reach differing conclusions on the issue" as to whether plaintiff was an employee of Reading under the evidence adduced by the plaintiff. As earlier stated, plaintiff's evidence established that Coslett is an independent contractor and that its relationship with Reading both under its contract and performance is that of an independent contractor; Coslett was in complete charge of its own operations at Pier 11; it hired and fired its employees as it chose; its employees were on Coslett's payroll; and they were under Coslett's exclusive control and direction in the performance of their work.

Plaintiff's evidence in the instant case is virtually four square with that presented in Del Vecchio v. Pennsylvania Railroad Company, 233 F.2d 2 (3 Cir. 1956), cert. den. 352 U.S. 909, 77 S.Ct. 146, 1 L.Ed.2d 117, where we affirmed the District Court's granting of the defendant's motion for a directed verdict.

There, the plaintiff was the employee of a stevedore, Northern Contracting Company, an independent contractor, which under a written contract with the Pennsylvania Railroad Company, unloaded coal from the latter's railroad cars for transshipment into vessels docked at a pier; Northern used Pennsylvania equipment; Northern controlled the way it performed its work; it hired the plaintiff, paid him and directed him in the performance of his duties; and the railroad directed Northern which cars were to be unloaded and where to deliver their cargo.

In holding that Northern's status was that of an independent contractor and that the injured plaintiff there was its bona fide employee and not the employee of the railroad, we said at page 5:

"The usual tests evidencing appellant's bona fide employment by Northern are all present. Northern selected him, hired him, paid him, could discharge him and directed and controlled his work * * * The cooperation and assistance furnished by the railroad helped enormously in the successful accomplishment of Northern's task but it was Northern who controlled the way it performed its job".

Our holding in Del Vecchio is dispositive in the instant case.

For the reasons stated the Judgment of the District Court in favor of the defendants, entered November 17, 1966, will be affirmed.