MISSOURI–KANSAS–TEXAS RAILWAY COMPANY, a corporation, Appellant,

v.

Oscar HEARSON, Appellee.

No. 407–69.

United States Court of Appeals,
Tenth Circuit.

March 13, 1970.

Rehearing Denied April 14, 1970.

James J. Lysaught, Kansas City, Kan. (James R. Goheen, Kansas City, Kan., on the brief) for appellant.

Payne H. Ratner, Jr., Wichita, Kan., (Richard R. Barnes, Wichita, Kan., on the brief) for appellee.

Before MURRAH, Chief Judge, and HILL and HICKEY, Circuit Judges.

HILL, Circuit Judge.

This personal injury suit was brought by appellee Hearson against appellant railroad, known as the Katy, pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* The trial court determined as a matter of law that Hearson was an employee of the Katy for purposes of a FELA action, and the questions of the employer's negligence and of proximate cause were submitted to the jury. The jury awarded appellee Hearson $7,500 in damages for his injury. Appellant railroad appeals, asserting: 1) Appellee failed to prove by sufficient evidence any negligence on the part of the Katy railroad which caused appellee's injury in whole or in part; and 2) the trial court erred in determining as a matter of law that Hearson was an employee of the Katy at the time of his injury, and that the railroad's car-cleaning contract is void under 45 U.S.C. § 55 as an agreement the purpose of which is to exempt the railroad from FELA liability.

The facts are these. Oscar Hearson began working for the Katy in the early 1940's. From time to time his position with the Katy changed, and eventually he became a car-cleaner. This was his job with the railroad when, in 1957, it became necessary for the railroad to lay off a large number of men. Appellee was among the men laid off because at that time the Katy ceased doing its own car-cleaning and contracted it out. The Katy then contracted with one John Souter to do the car-cleaning previously done by the Katy's employees, including appellee, at the railroad's Parsons, Kansas yards. The contract was for an indefinite term subject to termination only upon 30 days notice by either party.

When Souter entered into the car-cleaning business in January of 1958, he hired laborers to clean the railroad's cars and appellee Hearson was hired by Souter in February of that year. Having previously been a car-cleaner in the same yards, appellee needed no instruction and went right to work cleaning the cars just as he had before the Katy laid him off. The only difference to him was that he had to furnish his own bar and hammer whereas before the Katy had supplied them, and he was being

paid by Souter. In addition to paying wages and concomitantly withholding taxes and Social Security, Souter provided his car-cleaning employees with brooms and shovels. There too was testimony that Souter also bought two trucks and a front-end loader which, among other jobs, he used to haul away debris accumulated after the railroad cars were cleaned. When the Katy did its own car-cleaning, it furnished all of the necessary tools to its employees. Other than these points there was no change in the car-cleaning operation as it existed prior to Souter's contract with the Katy. Appellee's duties as a car-cleaner remained the same insofar as he was to remove steel anchor plates, cut any bands hanging from the ceiling, pull nails from door posts, clean out trash and sweep out the cars.

Appellee continued in this capacity as a car-cleaner until February 14, 1966, when he was injured while attempting to open a door on one of the Katy's hydra-frame cars. Appellee described the circumstances of the injury beginning with being informed by the yardmaster that there was a car out on the Katy's cleaning track that needed cleaning. Appellee approached the car from the west side and saw that it had a car seal on the west side door. Since he was not supposed to break the seal on loaded cars, appellee went to the other side of the car to see if he could open the door on that side to determine whether the car was unloaded and could be cleaned. There was no seal on the east door so appellee attempted to raise a metal latch preparatory to sliding the door open. The latch which released the door was tight so appellee tapped it with his hammer. There was testimony that the latches often required such a tap to get them to slide into a position from which the door could be opened. In this instance, the tap did not release the latch; appellee had to hit the latch harder and harder. Finally he hit it hard enough to get it to release. While hammering on this latch, something hit appellee in the eye which later turned out to be a piece

of metal. Subsequently Hearson all but lost his sight in that eye.

The hammer which appellee used was placed in evidence to show that the metal fragment did not come from the hammer. Appellee's evidence further showed that a properly operating door opens with at most a slight tap on the latch to release it. Appellee's expert witness was asked about the fact that the latch had to be hammered very hard and the door had to be pried open with a bar once the latch was released. He testified that the door was not rolling on its rollers and it would have to be that the side of the car to which the door passes to was bulged out; that often the commodities loaded in the car will push the car side out of shape in transit, and if the door post is bulged out the door is pinched so that it will not move; that this also puts pressure on the release latch which holds the door; and, it is almost impossible to get the door back in shape without going to the repair shop.

There was testimony that prior to 1957 the Katy employed from 12 to 14 car inspectors on each shift, but after 1957 this number was reduced to 3 car inspectors on each shift. Previously 4 inspectors were assigned to each train, but after 1957 2 inspectors were assigned to each train. The car inspectors inspected for defects which would penalize the railroad under I.C.C. rules and did not inspect for defective doors. Also, after an inspection the car would be sent to the cleaning track.

Appellant moved for a directed verdict at the close of plaintiff's evidence and at the close of all evidence; the Katy also moved for a new trial after the jury's verdict for appellee. The motions were denied by the trial judge, and appellant Katy has taken this appeal making the same arguments as urged before the trial judge.

We deal first with appellant's argument that appellee's evidence taken in its best light failed to establish any act of negligence on the part of the Katy, and consequently it was error to deny appellant's motion for a directed verdict

and submit the issue to the jury. Appellant urges us to review the record and conclude that it is devoid of evidence showing either the existence of a duty on the part of the railroad or the breach of a duty. Appellant would also contend that if there was a duty breached, there is insufficient evidence to causally relate it to the injury.

At the outset we note that this is not an ordinary negligence case in which plaintiff must prove fault by a preponderance of the evidence. Rather, this is a statutorily-created action which imposes on the plaintiff the burden of showing only *slight* negligence.[1] Thus, when considering defendant's motion to dismiss in a FELA case, the trial judge's single inquiry is "whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death." Rogers v. Missouri Pacific Railroad Company, 352 U.S. 500, 506–507, 77 S. Ct. 443, 449, 1 L.Ed.2d 493 (1957). If that test is met, the judge is bound to find that a case for the jury is made out. Upon appeal of the order denying dismissal, the search of an appellate court is necessarily limited to a search for minimal evidence which could support a finding of the employer's negligence. And, because a statutory action under FELA significantly differs from a common law negligence action in terms of standard of proof,[2] it naturally follows that when an appellate court is asked to overturn the jury's verdict in a FELA case, we need only look to see if the evidence is completely devoid of probative facts which support the conclusion reached.[3] With this in mind, we first point out—and there can be no argument on this—that the railroad has a duty to furnish its employees with a reasonably safe place to work. Thus the only real questions on the evidence are whether there was sufficient evidence of a breach of that duty and whether that breach was the or a proximate cause of the injury. The record shows that the railroad did inspect the incoming cars, but only for penalty defects. Moreover, the number of inspectors on each shift was cut drastically after the general layoff of employees in 1957. To some extent the reduction in inspectors was in proportion to the reduced traffic through the Katy's Parsons yards, but there is a clear inference in the testimony that the assignment of two inspectors to each train after 1957 was inadequate to do the job previously done by four inspectors. We think the evidence, when considered most favorably to plaintiff-appellee, was susceptible of an inference of negligence for failure to provide a reasonably safe place to work when measured by standards of due care commensurate to the dangers of the business.[4] It is for the jury to decide whether the inspections or lack thereof satisfied the Katy's duty to provide Hearson with a safe place to work.[5]

In disposing of the question of whether there was sufficient evidence of a causal relation between the railroad's negligence and appellee's injury, we need only pause to reiterate the Supreme Court's words in Rogers v. Missouri P. R. Co., 352 U.S. 500, 506–507, 77 S.Ct. 443, 448–449, 1 L.Ed.2d 493 (1957): "Under this statute [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the

1. Lane v. Gorman, 347 F.2d 332 (10th Cir. 1965).

2. Boeing Company v. Shipman, 411 F.2d 365 (5th Cir. 1969).

3. Boeing Company v. Shipman, 411 F.2d 365 (5th Cir. 1969); Denver and Rio Grande Western Railroad Co. v. Conley, 293 F.2d 612 (10th Cir. 1961); Fleming v. Kellett, 167 F.2d 265 (10th Cir. 1948).

4. Murray v. Denver and Rio Grande Western Railroad Co., 229 F.2d 644 (10th Cir. 1956).

5. Webb v. Illinois C. R. Co., 352 U.S. 512, 515, 77 S.Ct. 451, 1 L.Ed.2d 503 (1957).

employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death." (Footnotes omitted).

■ Upon applying the standard set out in the Rogers case, supra, and keeping in mind the admonition of the Supreme Court in Tennant v. Peoria & Pekin Union R. Co., 321 U.S. 29, 32, 64 S.Ct. 409, 88 L.Ed. 520 (1944) that mere speculation be not allowed to do the duty for probative facts, we can only conclude that the trial judge did not err in submitting the issues of negligence and causation to the jury. "The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. * * * Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." [6] We must conclude from the record that probative facts support the jury's verdict.[7]

Up to this point we have been assuming arguendo that appellee Hearson was an employee of the Katy at the time of the injury. Now we consider whether it was error for the trial court to rule as a matter of law that appellee was an employee of the Katy within the purpose and spirit of the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, pausing only to preface our discussion with the remark that the Act is remedial and humanitarian legislation and must be construed liberally.[8]

■ The question of whether a party suing under the Federal Employers' Liability Act is an employee of the railroad, an employee of an independent contractor or an employee of both contains factual elements making it a question for the jury under proper instructions. "Only if reasonable men could not reach differing conclusions on the issue may the question be taken from the jury." [9] Another perspective of the question is to consider whether Souter is merely a nominal independent contractor, such that appellee Hearson in reality is an employee of the railroad. For an answer to these queries we must consider a number of factors, the foremost of which is whether the railroad has the power to direct, control and supervise appellee in the performance of his work at the time he was injured. But "right to control" itself is a function of other relevant factors,[10] and in this respect the Supreme Court refers us to the Restatement, Agency 2d 220(2).[11]

A compilation of all the relevant factors that underlie the "right to control" include: (a) the extent of control which by agreement, the master may exercise over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation with reference to whether in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer supplies the tools and the place of work; (f) the length of time for which the person is employed; (g) the

6. Tennant v. Peoria & Pekin Union R. Co., 321 U.S. 29, at 35, 64 S.Ct. 409, at 412 (1944); *see* Lane v. Gorman, 347 F.2d 332 (10th Cir. 1965).

7. *See* Shenker v. Baltimore and Ohio Railroad Co., 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963).

8. Urie v. Thompson, 337 U.S. 163, 182, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).

9. Baker v. Texas & Pacific R. Co., 359 U.S. 227, at 228, 79 S.Ct. 664, at 665, 3 L.Ed.2d 756 (1959).

10. Byrne v. Pennsylvania Railroad Company, 262 F.2d 906, 912 (3d Cir. 1959).

11. Ward v. Atlantic Coast Line R. Co., 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960); Baker v. Texas & Pacific R. Co., 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959).

method of payment; (h) whether or not the work is a part of the regular business of the employer; (i) whether or not the parties believe they are creating the relation of master and servant; and (j) whether or not the principal is or is not in business. No one factor is decisive because each case revolves around its peculiar facts.[12]

Hence it is but one factor that the Katy's car-cleaning contract with Souter denominates Souter as an independent contractor. This characterization is not determinative.[13] Moreover, this characterization plus the fact that Souter paid appellee Hearson and the fact that Hearson supplied his own bar and hammer and Souter supplied the broom are the only factors that show a strict independent contractor relationship rather than an employment relationship within the meaning of FELA. But the significance of these factors pales in the light of the other considerations. The record is replete with testimony to the effect that the railroad controlled the significant parts of the car-cleaning operation just as it did before it contracted with Souter and just as it did after Souter terminated the contract shortly after appellee's injury. The Katy's yardmaster determined which cars appellee should clean and told him where they were. Souter himself never was around when appellee was working except in a few instances. It is not important that the railroad was not looking over appellee's shoulder while he was working because appellee was concededly a very good worker who required no direction in doing such a relatively simple task.

Although Katy did not seek to decide whether appellee should sweep from left-to-right or right-to-left, the Katy did reserve and exercise control over all the other details of the cleaning job. It was the railroad that determined whether the cars were cleaned properly and whether they should be sent back for re-cleaning. Testimony was that if the railroad's yardmaster came over to appellee and gave him instructions or told him to sweep out the corners, appellee should and would have complied. It is of no moment that appellee had no set work schedule because the evidence is that the Katy could directly call appellee out to the yards when it needed him, and on at least one occasion they called him at night and had him come out to clean cars. This, more than anything else, manifests the control which the railroad maintained over the car-cleaning operations.

That the Katy did not supply the cleaning tools is of little importance since the required tools were so simple. Although Souter paid appellee Hearson's wages, this too is of little importance since the trial judge correctly determined that in these circumstances the car-cleaning contract which provided that Souter pay the car-cleaners' wages appears as an attempt to avoid the Federal Employers' Liability Act and is void under 45 U.S.C. § 55.

After considering the elements of control, the trial judge ruled as a matter of law that Hearson was an employee of the Katy subject to their right of control.[14] We agree with the trial judge that under the undisputed evidence in the case it is an inescapable conclusion

---

12. Cimorelli v. New York Cent. R. Co., 148 F.2d 575, 577 (6th Cir. 1945).

13. Ward v. Atlantic Coast Line R. Co., 362 U.S. 396, 400, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960).

14. The district court relied on Pennsylvania R. Co. v. Barlion, 172 F.2d 710 (6th Cir. 1949). In addition, see Baker v. Texas & Pac. R. Co., 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959); Smith v. Norfolk & Western Ry. Co., 407 F.2d 501 (4th Cir. 1969); Pennsylvania R. Co. v. Roth, 163 F.2d 161 (6th Cir. 1947); Cimorelli v. New York Cent. R. Co., 148 F.2d 575 (6th Cir. 1945); accord Tarboro v. Reading Co., 396 F.2d 941 (3d Cir. 1968); Hetman v. Fruit Growers Express Co., 346 F.2d 947 (3d Cir. 1965); Del Vecchio v. Pennsylvania Rd. Co., 233 F.2d 2 (3d Cir. 1956); Dougall v. Spokane, P. & S. Ry. Co., 207 F.2d 843 (9th Cir. 1953).

that Hearson was an employee of the railroad company within the purpose and spirit of the Federal Employers' Liability act.

Affirmed.