**GEORGE N. VANTERPOOL, and MARJORIE VANTERPOOL, his wife, Plaintiffs**

**v.**

**HESS OIL VIRGIN ISLANDS CORP., Defendant**

Civil No. 1983/341

District Court of the Virgin Islands

Div. of St. Croix

June 7, 1984

JOHN K. DEMA, ESQ., Christiansted, St. Croix, V.I., and JOHN R. COON, ESQ., Christiansted, St. Croix, V.I., *for plaintiffs*

BRITAIN H. BRYANT, ESQ., Christiansted, St. Croix, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

We must decide in this case whether the borrowed employee doctrine applies in the Virgin Islands. In a workmen's compensation setting, it involves the situation where a worker who is employed by one employer is borrowed by another employer to provide temporary services. When applied, the doctrine bars that employee from filing any common law action for damages, if he is injured, against the borrowing employer in the same manner as he is barred from an action against his regular employer.

We find that the doctrine does apply in this jurisdiction, but we will deny summary judgment to the defendant because a material fact is in dispute.

## I. FACTS

The plaintiff George N. Vanterpool ("Vanterpool") was employed by Litwin Panamerican Corporation ("Litwin") at the refinery of Hess Oil Virgin Islands Corp. ("HOVIC"). Litwin was essentially a labor broker supplying workers for temporary assignment at HOVIC. Vanterpool was accustomed to such assignments. Prior to each particular assignment, he was required to execute a certain form called a "Rehire Form", prepared by Litwin. He signed his first "Rehire Form" on July 1, 1976, with nine others to follow. The last occasion he signed such a form was on September 11, 1979.

The form, as pertinent to this case, stated:

This is to inform you of the conditions under which you will be working while a "HESS Turnaround Loanee".

You should be aware that while working as a Loanee:

1. HOVIC personnel will control, direct and supervise all aspects of your work.
2. At no time should you receive or act under instructions from Litwin supervision.
3. HOVIC will provide you with safety equipment and will ensure that all safety conditions surrounding your work are met.

Vanterpool put his initials to this part of the form, and placed his signature at the appropriate location at the bottom. He then went to work until November 17, 1981, when he was injured.

On the date of his injuries, Vanterpool was working with a large mobile welding machine, attempting to link it to a trailer hitch connected to a truck. All the above equipment was owned by HOVIC. His complaint alleges that he was doing his work "according to the instructions of HOVIC personnel", while his later affidavit claims "the details of my work were directed by a pipefitter who was employed by Litwin." There is no question Vanterpool was working on HOVIC property, doing HOVIC's work. He could have been fired by HOVIC without decisional involvement by Litwin.

Vanterpool, at the time, remained on the Litwin payroll. As part of the contract between Litwin and HOVIC under which he was working, Litwin was specifically responsible for making the insurance premium payments to the Government Insurance Fund whereby Vanterpool would be eligible for workmen's compensation benefits if injured. Litwin then charged the expense back to HOVIC. Vanterpool received workmen's compensation benefits under this arrangement after his injury.

He also filed an action against HOVIC, claiming the negligence of HOVIC was responsible for his injuries. HOVIC filed this motion for summary judgment, invoking the borrowed employee doctrine. The matter is a case of first impression in the jurisdiction. The factual situation is presented herein in the light most favorable to Vanterpool, the non-moving party.

## II. HISTORY OF BORROWED EMPLOYEE DOCTRINE

The genesis of the borrowed employee doctrine is found in Standard Oil Co. v. Anderson, 212 U.S. 215, 220–221 (1908), whereby the Supreme Court defined the matter as follows:

One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent and acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation.

Id. at 220.

Likewise, the Court added:

It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter an agreement with another. If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished.

Id. at 221.

This doctrine is contained in the Restatement (Second) of Agency §§ 220, 227 (1958).

██ The essential factors to be considered in whether the borrowed employee doctrine applies have remained constant since Standard Oil, supra. They are, in the main:

(1) Who has control over the employee and the work he is performing?
(2) Whose work is being performed?
(3) Was there an agreement between the original and the borrowing employer?
(4) Did the employee consent and acquiesce in the new situation?

Other courts have added additional factors which should also be considered, such as: who paid the employee's wages; who had the power to terminate his employment; and who furnished the tools with which the work was performed and the place for performing the work? Tarboro v. Reading Co., 396 F.2d 941, 943 (3d Cir. 1968).

Which factors are to be given greater weight depends in part upon whether the case involves (1) invocation of the concept of respondeat superior, where one is attempting to hold the proper employer responsible for the torts of his employee, or (2) if the case involves an attempt to use the borrowed employee doctrine to bar an employee from a common law damage action and restrict him to the exclusive coverage provided by workmen's compensation. Gaudet v. Exxon Corp., 562 F.2d 351, 356 (5th Cir. 1977).

44

The case at bar fits the pattern of the second type of case described above, in that HOVIC, claiming to be the special employer of Vanterpool, asks the Court to dismiss his common law tort claim for damages, asserting that his sole remedy is workmen's compensation benefits.

■ The suggestion that some factors are given greater weight in certain types of cases than in others can be explained in this way: if the intent is to hold an employer under the theory of respondeat superior for the acts of an employee, the elements of control and a clear understanding that the employee has been shifted from the general employer to perform services for the special employer will be important. Byrne v. Pennsylvania R.R. Co., 262 F.2d 906, 911 (3d Cir. 1959).

■ But if the case involves a worker filing a common law claim for damages by reason of negligence of the special employer, and it is sought to bar that claim and leave the worker solely to his workmen's compensation benefits, then the question of whether the worker acquiesced in the employment situation and made a knowing waiver of such right becomes important. At 1C A. Larsen, Workmen's Compensation Law § 48.10 at 8-319 (1982), the following point is forcefully made:

> In compensation law, the spotlight must now be turned upon the employee, for the first question of all is: Did he make a contract of hire with the special employer? If this question cannot be answered "yes," the investigation is closed, and there is no need to go into tests of relative control and the like.
>
> This must necessarily be so, since the employee loses certain rights along with those he gains when he strikes up a new employment relation. Most important of all, he loses the right to sue the special employer at common law for negligence; and when this question has been presented in this form, the courts have usually been vigilant in insisting upon a showing of a deliberate and informed consent by the employee before employment relation will be held a bar to common-law suit.

■ In deciding whether the borrowed employee doctrine can be used as a defense to common law liability in a workmen's compensation context, two other factors must be considered. These are aimed at determining the answer to the issue of informed consent. They are: (1) was the second employer itself responsible for the working conditions experienced by the employee and the risks inherent

45

thereto, and (2) was the employment with the new employer of such duration that the employee could be reasonably presumed to have evaluated the risks of the work situation and acquiesced? Gaudet, supra, at 357.

All of that having been said, we now confront the claim by Vanterpool that the Workmen's Compensation Act of the Virgin Islands, 24 V.I.C. § 251 et seq. (the "Act"), does not leave room for the borrowed employee doctrine.

## III. APPLICABILITY TO THE VIRGIN ISLANDS

Section 251 of the Act contains several definitions important to our consideration:

"Employee" means any person, including a minor, employed under any appointment or contract, express or implied, oral or written, or in the service of any employer.

"Employer" means . . . any person or body of persons whether incorporated or not, any partnership or association, contractors or subcontractors.

Section 272(a) provides:

Every employer shall secure the payment of compensation under this chapter by insuring with the Government Insurance Fund created by this chapter.

Section 284 provides:

When an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer. . . .

Third party actions against those responsible for an injury are permitted against nonemployers under section 263 of the Act. It is asserted by Vanterpool that HOVIC was a third party and not his employer, since HOVIC did not pay the workmen's compensation premiums on his behalf into the Government Insurance Fund. Litwin, according to Vanterpool, made all such premium payments, filed the personal injury report with the Department of Labor, and it was through Litwin's coverage that he received benefits.

He argues that since the Act by express design fails to provide the vehicle for the borrowed servant doctrine, the doctrine cannot be piggybacked into the jurisdiction by the Restatement (Second) of Agency §§ 220, 227 (1958). As is well known, 1 V.I.C. § 4 provides that the common law as expressed in the restatements of the law

46

will be the rules of decision in our courts in the absence of local laws to the contrary.

■ In our view, the borrowed employee doctrine can be encompassed within the Workmen's Compensation Act. The definitions of "employee" and "employer" are broad enough to include the special employer status covered by the borrowing employer in the doctrine. And, we find, the requirement of insurance coverage can be met by a contractor, by the expedient of requiring as part of a contract that the subcontractor meet the burden of insurance premiums, with the cost passed on to the contractor.

Under our Act, the contractor is not legally responsible for the payments of insurance premiums if the subcontractor fails to make those payments as promised. However, the contractor, in this case HOVIC, has great incentive to assure premiums are paid, because the failure of the subcontractor, in this case Litwin, to make such payments could leave both of them open to a direct action by the employee under section 261(b)(1) of the Act, even if the borrowed employee doctrine is in place.[1]

■ We adopt the reasoning contained in Musick v. Puerto Rico Telephone Co., 357 F.2d 603, 604 (1st Cir. 1966), since it is a case interpreting Puerto Rico's workmen's compensation statute, from which ours was comprehensively adopted in 1954. We recognize that we are only bound by other courts in their interpretation of statutes adopted by the Virgin Islands where those decisions were rendered *before* we made those statutes our own. Berkley v. West Indies Enterprises, Inc., 480 F.2d 1095 (3d Cir. 1973). But we find Musick, supra, persuasive.

In that case the First Circuit said:

> We hold, in sum, that the employee of an insured independent contractor or subcontractor cannot entertain a tort action against the primary contractor. Not only does this seem the more probable resolution of the admittedly ambiguous statutory scheme, but we believe it is more consistent with the policies of workmen's compensation.

---

[1] Section 261(b)(1) states:

The injured employee of an uninsured employer, or the employee's beneficiaries, instead of receiving compensation under this chapter may elect, at any time prior to the rendering of a decision by the Commissioner, to bring suit for damages against the employer, just as if this chapter were not applicable.

Id. at 605.

This view is supported by Larsen as well. 2A A. Larsen, Workmen's Compensation Law § 72.31 at 14-125 (1982). The subsequent reversal of Musick, supra, by Colon Nunez v. Horn-Linie, 423 F.2d 952 (1st Cir. 1970), was described by Larsen as a "morsel of xenophobia" and "less than convincing".

It was also strongly criticized by the Puerto Rico Supreme Court in a subsequent decision, Lugo Sanchez v. Puerto Rico Water Resources Auth., 105 D.P.R. 861 (1977), which effectively reinstated the rule of Musick. Thus we adopt for the Virgin Islands the present interpretation by the courts of Puerto Rico of the statute largely identical to our own.

Having found the borrowed employee doctrine applicable to the Virgin Islands, we must decide whether it applies on the facts in this case, and whether, if it does, the complaint must be dismissed.

## IV. APPLICABILITY TO VANTERPOOL

At the outset, we discuss the applicability of the borrowed employee doctrine to the case at bar in the context of whether summary judgment is the appropriate vehicle for such a determination. The question of employment in a workmen's compensation matter is a fact question usually left for the jury. Valo v. Monessen Southwestern Ry. Co., 407 F.2d 1400, 1402 (3d Cir. 1969).

▮ In Tarboro, supra, at 943, the Third Circuit emphasized:

While each case "must be decided on its peculiar facts and ordinarily no one feature of the relationship is determinative", and the question of employment "contains factual elements such as to make it one for the jury . . .", the question may be taken from the jury "if reasonable men could not reach differing conclusions on the issue."

citing Baker v. Texas & Pacific Ry. Co., 359 U.S. 227, 228 (1959).

Vanterpool strongly suggests there is a dispute over the facts. Despite his signing of the "Rehire Form", he states that he wore Litwin-issued clothing and safety equipment, and his work was directed by a fellow Litwin employee, with "infrequent" instructions from HOVIC supervisors. He does not, however, withdraw his own statement in his complaint that his work was done "according to the instructions" of HOVIC.

We do not see Vanterpool's assertions as in dispute with those of HOVIC in this regard. He does not claim that Litwin supervised his

48

activities. Clearly, HOVIC can exercise control and supervision over Vanterpool at the same time he receives routine directions from a fellow Litwin employee, who is a pipefitter. There is no contradiction of the affidavit of Irwin L. Ramsey of HOVIC, who stated that he was Vanterpool's foreman and that he, as foreman, had "actual control of all the details of Vanterpool's work".

Thus, even if he took routine direction as an unskilled laborer from a Litwin pipefitter, there is no factual question at all that Vanterpool was supervised and controlled by HOVIC. There is also no dispute that HOVIC defined the work to be performed for it pursuant to the Litwin-HOVIC agreement. Likewise, there is no dispute that Vanterpool used HOVIC equipment to perform his work, even though he might have been issued standard safety gear from Litwin.

Having signed the "Rehire Form", there could have been no doubt that Vanterpool knew he would be working as a "HESS Turnaround Loanee".

Therefore, all of the elements of the borrowed employee doctrine are factually present except one . . . but that is an essential element. Vanterpool swore in his affidavit that he never gave his consent to be an employee of HOVIC in the knowing sense. He stated: "I was never informed that by working at HOVIC I would lose my right to sue HOVIC in the event that I was injured through the negligence of HOVIC, its employees or agents."

The HOVIC response to this is to cite Vanterpool's long history as a "HESS Turnaround Loanee", from 1976 to November 1981. HOVIC suggests that over such a time he could not help but be aware of every aspect of his employment situation. But even HOVIC must acknowledge that for all that *was* contained in the "Rehire Form" signed by Vanterpool, there *was no* statement bringing his attention to a potential waiver of third party common law rights.

We cannot find the presence of knowing consent and full acquiescence required by Standard Oil, supra, to be an undisputed fact in the case herein. We agree that there are cases which hold that a worker such as Vanterpool, after working for a lengthy period of years for the special employer, can be presumed to have evaluated his full employment situation and have become aware of its conditions. See, e.g., Gaudet, supra, at 357. (Worker under special employer's control for more than 14 years.)

The fact of intermittent employment such as Vanterpool experienced with Litwin at HOVIC from July 1976 to November 1981, cannot be said to be of such lengthy period as to unquestionably

49

attribute such awareness to him. That must be left for a jury to decide.

Therefore, even with all the other elements of the borrowed employee doctrine established without material factual dispute, we hark to the language cited earlier from Larsen, that the employee must give his knowing and informed consent before that doctrine can be invoked against him in a workmen's compensation setting.

■ To this Court, informed acquiescence is the sine qua non among the factors which must be present for application of the borrowed employee doctrine against Vanterpool. Since that issue is a material fact in dispute, we cannot at this stage invoke it either against Vanterpool or in favor of HOVIC.

## CONCLUSION

We find that the borrowed employee doctrine does apply in the Virgin Islands. However, because a material fact is in dispute in this case, the matter will be left for jury determination. The motion for summary judgment will be denied.

## ORDER

THIS MATTER is before the Court on motion of the defendant for summary judgment per Fed. R. Civ. P. 56. The Court having filed its Memorandum Opinion of even date herewith, now therefore it is

ORDERED:

THAT defendant's motion for summary judgment is DENIED.