George N. VANTERPOOL, Marjorie
Vanterpool, his wife

v.

HESS OIL V.I. CORP., Appellant.

No. 84–3506.

United States Court of Appeals,
Third Circuit.

Argued Feb. 7, 1985.

Decided June 28, 1985.

Britain H. Bryant (Argued), Bryant, Lenahan and Eltman, Christiansted, St. Croix, U.S. Virgin Islands, for appellant.

John R. Coon (Argued), Christiansted, St. Croix, U.S. Virgin Islands, for appellee.

Before GARTH and BECKER, Circuit Judges, and ROSENN, Senior Circuit Judge.

## OPINION OF THE COURT

GARTH, Circuit Judge.

This appeal comes to us as a certified question pursuant to 28 U.S.C. § 1292(b). We are asked to decide two questions: 1) whether the borrowed employee doctrine applies in the Virgin Islands so that workers' compensation may supply the exclusive remedy for injuries sustained by an employee loaned to the borrowing employer and engaged in the performance of a borrowing employer's work;[1] and 2) whether, to establish workers' compensation as an injured employee's exclusive remedy against a borrowing employer, the borrowed employee must be shown to have knowingly waived his common law right to maintain a tort action for personal injury against the borrowing employer.

We hold that the "borrowed employee doctrine" applies in the Virgin Islands and that no express waiver of an employee's common law rights as against the borrowing employer need be demonstrated.

## I.

Litwin Panamerican Corporation ("Litwin") and Hess Oil Virgin Islands Corporation ("HOVIC") entered into an agreement whereby Litwin was to provide personnel to perform general maintenance and turnaround work at HOVIC's St. Croix refin-

---

1. We note that since the district court's decision in this matter, the Legislature of the Virgin Islands has amended the Workmen's Compensation Act, V.I.Code Ann. tit. 24, § 251 *et seq.* (1978), to provide that the borrowed employee doctrine shall not apply in the Virgin Islands. *See* Omnibus Authorization Act of 1985, No. 5014, § 213 (Oct. 19, 1984). Under the amended statutory scheme, a borrowing employer may remain a third-party tortfeasor against whom an injured employee may bring a common law action for personal injuries. The amendment's effect is prospective only. Thus the revised stat-

ery.[2] Litwin workers were divided into two labor classifications: Type-I personnel, over whom HOVIC assumed direct control and supervision, and Type II personnel, over whom Litwin retained direct control and supervision. This appeal concerns only Type I personnel.

The Litwin-HOVIC agreement expressly provided that "Type I work is defined as that performed by CONTRACTOR'S (Litwin's) craftsmen, foremen and supervisors ... where such employees have been loaned to HOVIC and are under HOVIC's direct supervision, direction and control, and CONTRACTOR has no general or turnaround superintendent assigned to the work." App. at 23. The agreement further provided that maintenance and turnaround workers would be furnished in the numbers and according to the skills requested by HOVIC. *See* app. at 24–25. Even if Litwin were asked on occasion to supply a turnaround supervisor or coordinator, HOVIC would thereafter assume direction and control of all personnel. *See* app. at 25.

Thus, although the term of a given employee's assignment to HOVIC was not fixed, any assigned Type-I employee would necessarily work under the direct supervision and control of HOVIC. Borrowed employees, such as Vanterpool, who was borrowed by HOVIC from Litwin, remained on the Litwin payroll and Litwin made insurance premium payments to the statutory workers' compensation fund. *See* app. at 31. HOVIC, in turn, reimbursed Litwin for all payroll expenses incurred for borrowed employees, including workers' compensation premiums. *See* app. at 104 (affidavit of Edward L. Weinman, Controller of HOVIC). This reimbursement was made by including the cost of procuring workers' compensation insurance as a factor in the scheduled time and materials rate paid to Litwin for borrowed employees. *Id.*

George Vanterpool was first hired by Litwin to work as a Hess turnaround loanee (borrowed employee) in July 1976. Thereafter, he was rehired on nine separate occasions. Prior to each assignment, Vanterpool signed a "Rehire Form" prepared by Litwin. The rehire form stated in pertinent part:

This is to inform you of the conditions under which you will be working while a "Hess Turnaround Loanee".

You should be aware that while working as a Loanee:

1. HOVIC personnel will control, direct and supervise all aspects of your work.

2. At no time should you receive, or act under instructions from Litwin Supervision.

3. HOVIC will provide you with safety equipment and will ensure that all safety conditions surrounding your work are met.

Vanterpool both signed the rehire form in its entirety and initialed the specific provision relating to the conditions of his employment.

On September 11, 1979, Vanterpool signed a rehire form and began work at the HOVIC refinery. On November 17, 1981, while working with a large mobile welding machine, Vanterpool injured his back. He thereafter filed a claim for workers' compensation and received compensation from the Government Insurance Fund for $110.00 in medical costs. App. at 91. Although this compensation claim was processed by the Fund against Litwin, HOVIC reimbursed Litwin for the actual cost of Litwin's contribution to the Fund pursuant to the rate schedules established by the Litwin-HOVIC agreement.

■ Vanterpool then brought the present action against HOVIC, seeking damages for personal injury sustained because of HOVIC's alleged negligence.

---

ute, while applicable in future cases, does not govern the present controversy.

**2.** Turnaround work consists of the disassembly, cleaning, and reassembly of various pipelines and parts used in the refinery process.

HOVIC moved for summary judgment[3] on the grounds that the action of a borrowed employee was barred by the exclusive remedy provision of the Virgin Islands Workmen's Compensation Act, V.I.Code Ann. tit. 24, § 284.[4] This motion was denied. The district court held that although the borrowed employee doctrine applied, the borrowed employee's knowing consent to the waiver of his common law rights against his borrowing employer was necessary to establish workers' compensation as his exclusive remedy. See *Vanterpool v. Hess Oil Virgin Islands Corp.*, 589 F.Supp. 334, 340 (D.C.V.I.1984) Because the court found a material issue of fact existed as to whether Vanterpool had knowingly consented to waive his common law rights against HOVIC, it declined to enter summary judgment for HOVIC. *Id.* at 341.

Upon motion by HOVIC, the district court certified for appeal to this court the questions of the applicability of the borrowed servant doctrine and the requirement that a borrowed employee knowingly waive his common law rights against his borrowing employer. We, in turn, granted HOVIC's petition for leave to appeal pursuant to 28 U.S.C. § 1292(b).

## II.

### A.

The initial question which we must decide is whether the borrowed employee doctrine applies within the statutory framework of the Virgin Islands Workmen's Compensation Act, V.I.Code Ann. tit. 24, § 251 *et seq.* To answer that question, an understanding of the doctrine and its origins is essential.

■ Under the borrowed employee doctrine, if a special (borrowing) employer exercises a sufficient degree of control over a borrowed employee for a time sufficient to suggest that the employee has assessed the risks of his new employment and has acquiesced in his borrowing employer's control, the borrowing employer may be deemed a statutory employer for purposes of workers' compensation. *See generally* 1C A. Larsen, Workmen's Compensation Law § 48.10 (1982). The borrowed employee is then barred from suing his borrowing employer for injuries sustained during the course of his employment; instead, the borrowed employee is remitted to the exclusive remedy provided by the relevant workers' compensation act. We must therefore determine whether HOVIC is shielded from common law tort liability as Vanterpool's employer within the meaning of the Virgin Islands Act or whether HOVIC remains a third-party tortfeasor against whom Vanterpool may maintain an individual action.

The borrowed employee doctrine was first recognized by the Supreme Court in *Standard Oil v. Anderson*, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909). The Court stated that "[o]ne may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third per-

---

**3.** Vanterpool's complaint alleges that at the time of his injury, Vanterpool worked "according to the instructions of Hess Oil Virgin Islands Corp. personnel." App. at 2. A subsequent affidavit, submitted by Vanterpool, states that "the details of [Vanterpool's] work were directed by a pipefitter who was employed by Litwin." App. at 65. Although Vanterpool thus attempts to create an issue of fact, it is not one sufficiently material to preclude this court or the district court from deciding whether, as a matter of law, HOVIC might be deemed Vanterpool's statutory employer for purposes of workers' compensation. By the express terms of the Litwin-HOVIC agreement, all loanees engaged in turnaround work were to act pursuant to the direction and control of HOVIC. It is undisputed

that at the time of his injury, Vanterpool was performing HOVIC's work, on HOVIC's property, and with the use of HOVIC equipment.

**4.** V.I.Code Ann. tit. 24, § 284 provides:

§ 284. Exclusiveness of remedy

When an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer; but in case of accident to, or disease or death of, an employee not entitled to compensation under this chapter, the liability of the employer is, and shall continue to be the same as if this chapter did not exist.—Amended June 15, 1961, No. 762, Sess. L.1961, p. 109.

son, so that he becomes the servant of that person with all the legal consequences of the new relation." 212 U.S. at 220, 29 S.Ct. 253. The Court further explained:

> It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men become *pro hac vice* the servants of him to whom they are furnished.

*Id.* at 221, 29 S.Ct. at 254.

Because *Anderson* concerned the imputed negligence of a borrowed employee (a winchman "borrowed" by the shipowner defendant from the winchman's general employer, the stevedore), this initial statement of the doctrine was developed in the context of *respondeat superior.* Accordingly, the Court emphasized the element of control as determinative of the question of vicarious liability. That the borrowed employee doctrine originated in an attempt to assign tort liability to the employer (shipowner) properly responsible for an employee's (the winchman's) tortious acts has not prevented the doctrine's extension to the context of workers' compensation disputes where it, in effect, limits the common law liabilities of the controlling employer.

The application of the borrowed employee doctrine in the workers' compensation setting is neither unfair nor unreasonable when it is remembered that compensation liability cannot exist in the absence of some express or implied contract of hire between the borrowed employee and the borrowing employer. *See* 1C. A. Larsen, *supra* at 8–319. To ensure that the doctrine is not invoked indiscriminately to curtail the common law rights of borrowed employees, other courts have emphasized a number of factors beyond mere control which are to be considered in the workers' compensation context. These include *inter alia:* 1) whether the second (borrowing) employer was itself responsible for the working conditions and the attendant risks experienced by the employee; 2) whether the employment with the borrowing employer was of such duration that the employee could be reasonably presumed to have evaluated and acquiesced in the risks of his employment; and 3) whether the work performed was that of the borrowing employer. *See Gaudet v. Exxon Corp.*, 562 F.2d 351, 357 (5th Cir.1977); *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312–13 (5th Cir.1969); *Tarboro v. Reading Co.*, 396 F.2d 941, 943 (3d Cir. 1968).

 Were the relationship between HOVIC and Vanterpool deemed to satisfy these factors, there is no apparent public policy which would preclude application of the borrowed employee doctrine to the present case. Although it is true that the Virgin Islands Act, like most compensation statutes, preserves an employee's right of action against third parties, the Act is intended to provide an injured employee with certain and absolute benefits in lieu of possible and speculative common law benefits obtainable only in tort actions against his employer. Indeed, as Vanterpool acknowledges, the Virgin Islands Act is mandatory; it conditions all employment within the Islands.[5] When an employee begins work

---

**5.** Vanterpool argues that because the Virgin Islands Act is a compulsory insurance scheme which requires an employer to contribute to an exclusive government fund, the borrowed employee doctrine cannot apply. That an employer must participate in a government administered fund rather than purchase insurance through a private carrier or act as a self-insurer does not, however, affect the availability of the borrowed employee doctrine. *Cf.* 4 A. Larson, Workmen's Compensation Law, App. A, Table 7 (summary of insurance requirements for private employment in different jurisdictions). The ultimate funding source is itself irrelevant to arrangements such as the Litwin-HOVIC agreement, where the costs of procuring insurance from any source is shifted from the original employer to the borrowing employer. Had the Virgin Islands enacted a compulsory insurance statute which allowed an employer to choose between the participation in a government fund or the purchase of private insurance, Vanterpool's relation to both Litwin and HOVIC would remain unchanged. Indeed, a borrowed

for an employer covered under the Act, he is automatically remitted to remedies under the compensation scheme for any injuries occasioned by his employer. Only when an employer fails to secure the insurance required under the Act is an employee's common law tort action against his employer preserved. *See* V.I.Code Ann. tit. 24, § 261(b)(1).[6] Thus, an employer's tort immunity arises as an inevitable consequence of compliance with the Act and loss of immunity is imposed only as a penalty for non-compliance.[7]

■ If, then, the relationship between HOVIC and Vanterpool may be characterized as one between employer and employee within the meaning of the Act, Vanterpool's remedies against HOVIC would necessarily be limited to those provided by the compensation statute. Indeed, the borrowed employee doctrine, although developed in a different context, may serve to clarify the nature of the employment relation that obtained between Vanterpool and

HOVIC. For the doctrine itself is but a means of determining which of two potentially liable actors functioned as an injured employee's actual employer. Thus, numerous jurisdictions have applied the doctrine to determine an employer for purposes of workers' compensation. *See, e.g., Hebron v. Union Oil Co.,* 634 F.2d 245 (5th Cir. 1981) (applying borrowed employee doctrine to determine whether Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.,* would supply injured employee's exclusive remedy); *Gaudet v. Exxon Corp.,* 562 F.2d 351 (5th Cir.1977) (same); *Benoit v. Transco Exploration Co.,* 577 F.Supp. 304 (W.D.La.1983) (doctrine applied to determine whether workers' compensation statute supplied exclusive remedy); *Hooper v. Exxon Corp.,* 571 F.Supp. 477 (7 D.La.1983) (same). Moreover, the borrowed employee doctrine has been recognized in the Virgin Islands by virtue of the Restatement (Second) of Agency §§ 220, 227 (1958),[8] treated as the

employee's knowledge of and acquiesence in the risks inherent in his new employment is in no manner dependent upon his knowledge of the source from which compensation benefits may eventually be provided.

6. V.I.Code Ann. tit. 24, § 261(b)(1) provides:
 (b)(1) The insured employee of an uninsured employer, or the employee's beneficiaries, instead of receiving compensation under this chapter may elect, at any time prior to the rendering of a decision by the Commission, to bring suit for damages against the employer, just as if this chapter were not applicable.

7. That an employer's immunity is lifted as a punitive measure is made clear by V.I.Code Ann. tit. 24, § 261(b)(3) which prohibits an uninsured employer from asserting the common law defenses of contributory negligence, assumption of risk, or fellow servant in a resultant tort action.

8. Restatement (Second) of Agency § 220 provides:
 § 220. Definition of Servant
 (1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.
 (2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business.
Restatement (Second) of Agency § 227 provides:
§ 227. Servant Lent to Another Master
A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others.

applicable rules of decision in the absence of local law to the contrary. *See* V.I.Code Ann. tit. 1, § 4.

### B.

We turn to the question of whether the borrowed employee doctrine is embraced within the express statutory terms of the Virgin Islands Act.[9] Section 251 of the Act defines "employee" and "employer" in the following manner:

"Employee" means any person, including a minor, employed under any appointment or contract, express or implied, oral or written, or in the service of any employer.

"Employer" means the Government of the Virgin Islands, all public and quasi-public corporations, any person or body of persons whether incorporated or not, any partnership or association, contractors and subcontractors.

The definitions are broad. Although on their face they do not specify at what point an employer, like HOVIC, may be deemed the statutory employer for purposes of the Act, neither do they prohibit consideration of agreements such as that between Litwin and HOVIC. We conclude that the scope of the statutory definitions is sufficiently broad to include the special employer status that existed between Vanterpool and HOVIC, particularly where Vanterpool may be presumed to have consented to his borrowing employer's control and to have acquiesced in the risks associated with his special employment.

■ Vanterpool relies upon *Colon Nunez v. Horn-Linie*, 423 F.2d 952 (1st Cir. 1970) to argue that HOVIC cannot be an employer within the meaning of the Virgin Islands Act.[10] In *Colon Nunez*, the court held that the employee of an insured independent stevedore could sue a shipowner where the shipowner had contracted with the stevedore to provide services. The *Colon Nunez* decision overruled *Musick v. Puerto Rico Telephone Co.*, 357 F.2d 603 (1st Cir.1966), a case almost identical on its facts to the present controversy.

In *Musick*, plaintiff's original employer, International Communications Corporation, contracted to do maintenance and construction work for Telephone. Plaintiff was injured, received compensation from I.C.C., and then sued Telephone. The *Musick* court held that the injured employee of an insured independent contractor could not entertain a tort action against the primary contractor. *See* 357 F.2d at 605. Central to the *Musick* court's holding were the conclusions that Telephone could be deemed the statutory employer of the independent contractor's employees and that by requiring the independent contractor to procure insurance, the costs of which were transferred to Telephone, the latter, in effect, had "insured" the I.C.C. employees. Telephone, as the statutory employer, was thus held immune from suit.

■ *Colon Nunez*'s rejection of the *Musick* logic has been criticized[11] and express-

***

9. As previously noted, *see supra* at note 1, we here deal only with the unrevised statute which applied at the time the events giving rise to this litigation transpired.

10. *Colon Nunez* was based upon Puerto Rico's workers' compensation statute from which the Virgin Islands Act was adopted in 1954. Only those extraterritorial decisions which interpret adopted legislation prior to the date of its enactment by the Virgin Islands constitute binding precedent in the courts of the Virgin Islands. *See Berkeley v. West Indies Enterprises, Inc.*, 480 F.2d 1088, 1089, 1095 (3d Cir.1973). *Colon Nunez* is thus persuasive, but not binding authority in the Virgin Islands.

11. In discussing *Colon Nunez*, Larson states that the decision contradicts not only the court's own prior decision in *Musick*, but also the majority rule and the overall trend of the case law from other jurisdictions. *See* 2A A. Larson, *supra* § 72.31(b) at 14–126. Noting that the *Colon Nunez* court expressed particular concern that a foreign shipowner not be allowed to shift the burden of an injured worker's loss back onto the Puerto Rican economy by means of the exclusive government compensation fund, *see* 423 F.2d at 956, Larson characterizes the decision as a "morsel of xenophobia." 2A A. Larson, *supra* § 72.31(b) at 14–126.

More significantly, the *Colon Nunez* court argues that because Puerto Rico's compensation law is mandatory and comprehensive, no incentive is needed to induce contractors to insist that their subcontractors carry insurance. As Larson comments, however, the mandatory na-

ly rejected by the Puerto Rican Supreme Court in *Lugo Sanchez v. Puerto Rico Water Resources Authority*, 105 P.R.R. 850 (1977). Indeed, in *Lugo Sanchez*, the Puerto Rican Supreme Court endorsed the proposition that an employer who requires his independent contractors to take out workers' compensation insurance has "insured" the workmen of the independent contractor and is therefore immune from suit under the exclusive remedy provision of the Puerto Rico Workmen's Accident Compensation Act, 11 L.P.R.A. § 21.[12] Nor has the First Circuit followed *Colon Nunez* since *Lugo Sanchez*. *See Martinez v. Compania Trasatlantica Espanola S.A.*, 643 F.2d 897 (1st Cir.1981) (in longshoreman's suit for injury against shipowner, shipowner was immune from suit and entitled to benefit of exclusive remedy provision, even though compensation premium was paid by the stevedore); *Garcia v. Friesecke*, 597 F.2d 284 (1st Cir.), *cert. denied*, 444 U.S. 940, 100 S.Ct. 292, 62 L.Ed.2d 306 (1979) (same).[13]

■ We therefore conclude that the borrowed employee doctrine, as articulated and applied by the *Musick* court, may be encompassed within the statutory framework of the Virgin Islands Act. In the present case, Vanterpool specifically signed a Rehire Form designating HOVIC as his controlling employer. Indeed, once Vanterpool completed this form, he could have entertained little doubt that he would be working as a "Hess Turnaround Loanee." The mere fact that HOVIC chose to reimburse Litwin for the latter's payments to the workers' compensation fund rather than to undertake such direct payments

ture of the statute is not alone sufficient to guarantee universal compliance. *See* 2A A. Larson, *supra* § 72.31(b) at 14–126. Under neither the Puerto Rican nor the Virgin Islands scheme should a principal, who requires that his contractor comply with the applicable compensation law, be effectively penalized by thereby being precluded from ever being considered a statutory employer for purposes of workers' compensation.

12. 11 L.P.R.A. § 21 provides in pertinent part: When an employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer..

The facts in *Lugo Sanchez*, which called 11 L.P.R.A. § 21 into play, may be briefly summarized. The plaintiff was an employee of an independent contractor who had contracted with the defendant Authority to construct and maintain several thermoelectric plants. Steam valves in the plants required periodic repairs and prior to each repair, defendant Authority would be notified to remove all steam from the line. When the plaintiff began to disassemble a particular valve, he was injured by an escaping steam jet. Plaintiff's original employer was insured in accordance with the Puerto Rican Act and the plaintiff received compensation benefits. He thereafter sued the Authority as a third-party whose negligence caused his personal injury. The Supreme Court of Puerto Rico held that under the circumstances, the Authority was not a third party but rather was plaintiff's statutory employer and hence immune from suit.

13. The precise statutory provision upon which the *Lugo Sanchez* court and subsequent courts relied in interpreting the Puerto Rican Act was 11 L.P.R.A. § 20 which states:

§ 20. Employer to report all wages

Every insured employer shall, on reporting his annual payrolls, include in said payrolls the wages paid to all the workmen and employees working for or employed by him, whether by the job or under some person with whom the employer contracted for the job, or under a contractor or independent subcontractor employed or contracted by said employer; and all accounts or taxes collected by the State shall be based on the employer's current payroll in which shall be included the above-mentioned laborers; Provided, That this provision shall not be applicable to employers for whom work is done by an independent contractor who is insured as an employer under the provisions of this chapter.

The Virgin Islands Act contains no equivalent provision. Resort to section 20, however, was necessary because the Puerto Rican statute does not directly define employer or employee. This difference should not be allowed to obscure the fundamental policy behind *Musick*—that immunity is required to guarantee that an employer who insists that its contractors carry insurance is not in fact penalized for enforcing compliance with the law.

Indeed, to accept Vanterpool's argument, that omission of a similar reporting provision in the Virgin Islands statute bars HOVIC from being deemed a statutory employer, leads to the anomalous result that HOVIC should prefer not to have its contractors purchase insurance, since the consequence of their purchase would be that HOVIC would inevitably have the status of a third-party.

itself should not preclude HOVIC from being deemed a statutory employer for purposes of the Virgin Islands Act. Accordingly, we hold that the employment arrangement which obtained between Vanterpool and HOVIC comes within the class of special employments covered by the borrowed employee doctrine as applied in the Virgin Islands.

### III.

■ The sole remaining question in this appeal is whether, in order to establish workers' compensation as an injured employee's exclusive remedy against a borrowing employer, the borrowed employee must have expressly and knowingly waived his common law right to maintain a tort action for personal injury against his borrowing employer. We hold that no express and knowing waiver of a borrowed employee's common law rights need be shown where an employee's consent to, and acquiescence in, his special employment by a borrowing employer may be implied from the employee's continuing course of conduct.

As we have stated, the elements of the borrowed employee doctrine may differ when the doctrine is extended beyond its original use as a means to assign vicarious liability. When confronted by the doctrine's application in the workers' compensation setting, other courts have emphasized not only the element of the borrowing employer's control, but also whether the borrowed employee has made a contract of hire, either express or implied, with the borrowing employer (in this case HOVIC) and whether the work being done is essentially that of the borrowing employer

(HOVIC). *See generally* 1C A. Larson, *supra* § 48.10.

Because the foundation of workers' compensation rests on the contract for *hire*, the threshold inquiry must be whether the employee made such a contract with the borrowing employer. *See* 1C A. Larson, supra at 8–318–319. This inquiry, however, is different from whether the employee consented to accept the compensation scheme as well. As previously noted, where the scheme is mandatory, it conditions all employment. The borrowed employee may or may not make an express or implied contract for hire with a borrowing employer, but once such a contract is made, there is no secondary inquiry as to whether the employee consents to the application of the compensation scheme itself.

In the present case, the district court has sought to engraft just such a secondary inquiry onto the routine analysis used in borrowed employee cases. In seeking to accord maximum protection to a borrowed employee's common law rights, the district court would require Vanterpool's "consent to be an employee of HOVIC in the knowing sense." 589 F.Supp. at 340. Yet, to require the knowing and intelligent waiver by a borrowed employee of his common law right to sue his borrowing employer is to impose an essentially redundant requirement, particularly if the need for an express or implied contract of hire is scrupulously observed. Indeed, other courts have not discussed or imposed a knowing and intelligent waiver requirement presumably because the inquiry into whether an express or implied contract of hire exists adequately accounts for the employee's consent.[14] Nor has such consent been limited

---

**14.** In concluding that an employee's knowing waiver of his right to maintain a common law action for negligence against his borrowing employer was an essential element of the borrowed employee doctrine, the district court reiterated Larson's admonition that special attention must be paid to the employee's consent to his new employment. *See* 589 F.Supp. at 338. The relevant passage in Larson states:

In compensation law, the spotlight must now be turned upon the employee, for the first question of all is: Did he make a contract of

hire with the special employer? If this question cannot be answered "yes." the investigation is closed, and there is no need to go into tests of relative control and the like.

This must necessarily be so, since the employee loses certain rights along with those he gains when he strikes up a new employment relation. Most important of all, he loses the right to sue the special employer at common law for negligence; and when this question has been presented in this form, the courts have usually been vigilant in insisting upon a

to an express or formal agreement; consent has also been implied from an employee's prolonged acceptance of the special employer's control and direction. *See, e.g., Gaudet v. Exxon Corp.*, 562 F.2d 351 (5th Cir.1977).

Thus, the pertinent inquiries in applying the borrowed employee doctrine in the context of workers' compensation have been framed as: "(1) was the second [borrowing] employer itself responsible for the working conditions experienced by the employee, and the risks inherent therein, and (2) was the employment with the new [borrowing] employer of such duration that the employee could be reasonably presumed to have evaluated the risks of the work situation and acquiesced thereto?" *Gaudet*, 562 F.2d at 357; *see also Hebron v. Union Oil Co.*, 634 F.2d 245 (5th Cir.1981).

■ In the present case, the rehire form shows Vanterpool had specific knowledge that he would work as a Hess Turnaround Loanee under the supervision and control of Hess. His employment, although intermittent between July 1976 and November 1981, was not equivalent to a case where an employee momentarily leaves the worksite of his general employer and works temporarily for another (special) employer. At the time of his injury, Vanterpool had worked continuously at the HOVIC refinery for over two years. He thus had ample opportunity to assess and acquiesce in the risks attendant to his special employment.

Moreover, a crucial factor, not to be overlooked, is that with respect to Type I personnel, over whom HOVIC assumed direct control and supervision, Litwin functioned essentially as an employment broker. As such, Litwin was no more than a conduit to employment by others. It is difficult to conceive how a Type I employee, who obtained employment through Litwin, could be deemed to do anything *other* than consent to work for HOVIC.

■ We therefore conclude that an express and knowing waiver of a borrowed employee's common law rights is not a necessary element of the borrowed employee doctrine. Vanterpool was afforded clear notice that he would work under the direct control and supervision of HOVIC, on HOVIC's premises, and in the performance of HOVIC's work. His employment was of sufficient duration so that Vanterpool may be reasonably presumed to have evaluated the risks of his work environment and to have acquiesced in those risks.

Because the district court found that all elements of the borrowed employee doctrine, other than the knowing waiver requirement, were factually present and that no genuine issue of material fact existed with respect to any of these other elements, *see* 589 F.Supp. at 340, our conclusion that a knowing waiver requirement forms no part of the borrowed employee doctrine necessarily entitles HOVIC to the benefit of the exclusive remedy provision of the Workmen's Compensation Act, V.I. Code Ann. tit. 24, § 284. Accordingly, Vanterpool is barred by the Act from maintaining an action for negligence against HOVIC.

### IV.

■ In summary, we hold that the borrowed employee doctrine applies in the Virgin Islands and may permit workers' compensation to supply the exclusive remedy for injuries sustained by a borrowed employee engaged in the performance of a borrowing employer's work. However, to establish a borrowing employer as a statu-

---

showing of a deliberate and informed consent by the employee before employment relation will be held a bar to common-law suit.

1C A. Larson, *supra* § 48.10 at 8–319. Even in this formulation offered by Larson, the emphasis upon the deliberate and informed consent of the employee relates to the contract of hire rather than to some secondary and subsequent waiver of an employee's right to sue at common law. Indeed, as Larson makes clear, consent to special employment necessarily entails loss of a borrowed employee's common law remedies, when a workers' compensation statute obtains.

tory employer entitled to the benefits of the exclusive remedy provision of the Act, a borrowed employee must have consented to an express or implied contract of *hire* with the borrowing employer. Moreover, a borrowed employee's special employment must have been of a nature and of sufficient duration so that the employee may be presumed to have evaluated and acquiesced in the risks of his new employment. When these requirements are met, we hold that no express waiver of a borrowed employee's common law rights need be shown to entitle a borrowing employer to immunity from suit.

Accordingly, we answer the first question—whether the borrowed employee doctrine applies in the Virgin Islands so that workers' compensation may supply the exclusive remedy for injuries sustained by an employee loaned to the borrowing employer and engaged in the performance of a borrowing employer's work—in the affirmative.

We answer the second question—whether, in order to establish workers' compensation as an injured employee's exclusive remedy against a borrowing employer, the borrowed employee must be shown to have knowingly waived his common law right to maintain a tort action for personal injury against his borrowing employer—in the negative.

By our answers, we therefore will affirm so much of the district court's order of June 7, 1984 as holds that the borrowed employee doctrine applies in the Virgin Islands. We will reverse so much of that order as holds that a borrowed employee's knowing and intelligent waiver of his common law right to sue must be shown. Having reversed the district court's order, we will remand this proceeding to the district court with the direction that the district court enter judgment in favor of HOVIC because as a matter of law, HOVIC is to be deemed Vanterpool's statutory employer against whom an action for negligence is barred.