**SAMUEL COTTO, Plaintiff**

v.

**HESS OIL VIRGIN ISLANDS CORP., Defendant**

Civil No. 1984/318

District Court of the Virgin Islands

Div. of St. Croix

November 1, 1985

GORDON RHEA, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

NANCY V. YOUNG, ESQ., Christiansted, St. Croix, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

Hess Oil Virgin Islands Corporation once again seeks summary judgment in another case involving the borrowed employee doctrine. Based on the authority of Vanterpool v. Hess Oil V.I. Corp., 766 F.2d 117 (3d Cir. 1985) and its progeny we will grant HOVIC's motion for summary judgment. In this opinion we will further refine our interpretation of Vanterpool by briefly addressing new issues not included in any of our prior opinions.

## I. FACTS

Samuel Cotto ("Cotto") was hired by Litwin Panamerican Corp. ("Litwin"), on at least four occasions, the final period beginning on May 30, 1984. Litwin is essentially a labor broker in the business of supplying workers for temporary assignments at the Hess refinery. Litwin and Hess Oil Virgin Islands Corporation ("HOVIC") have an agreement whereby Litwin provides personnel to perform general maintenance and "turnaround" work at HOVIC's St. Croix refinery. Turnaround work involves a complete unit shutdown in order to inspect and overhaul the refining equipment.

For purposes of the contract Litwin classifies its employees in two categories, Type I or Type II. Type I employees work under the general control and supervision of HOVIC personnel, while Type II employees remain under Litwin's control.

Prior to employment, all Litwin Type I employees are required to sign a form which outlines the conditions of employment as a Type I

486

worker. Cotto was a Type I employee and on May 30, 1984, he signed just such a form which specifically stated:

1. HOVIC personnel will control, direct and supervise all aspects of your work.

2. At no time should you receive, or act under instructions from Litwin supervision.

3. HOVIC will provide you with safety equipment and will ensure that all safety conditions surrounding your work are met.

On May 31, 1984, Cotto claims he was injured when he tripped over a pipe while carrying a scaffold plank. At the time of the accident Cotto received direct instructions from Joseph Vanterpool, a fellow Litwin Type I employee. Vanterpool in turn received his instructions from Melwyn Moe, another Litwin Type I employee. These employees were supervised by John DeWeer, a HOVIC turnaround execution superintendent.

On November 9, 1984, Cotto filed suit against HOVIC. HOVIC then moved for summary judgment. Cotto responded with his own motion for summary judgment and we heard oral argument for both motions on October 16, 1985. At that time we took the matter under advisement.

## II. DISCUSSION

In Vanterpool v. Hess Oil V.I. Corp., 766 F.2d 117 (3d Cir. 1985), the Third Circuit outlined the criteria needed to establish a borrowing employer as a statutory employer entitled to the benefit of the exclusive remedy provision of the Workmen's Compensation Act. 24 V.I.C. § 284 (1961). These criteria are twofold. First, a borrowed employee must have consented to an express or implied contract of hire with the borrowing employer. Second, the employment must have been of a nature and of sufficient duration so that the employee may be presumed to have evaluated and acquiesced to the risks of his employment. Vanterpool, supra at 127–28.

HOVIC argues that Vanterpool should be applied to this case because Cotto, like Vanterpool, was a Litwin Type I employee working under HOVIC supervision.

In response Cotto raises two arguments which this Court has yet to address. First, Cotto argues that he did not enter into an express or implied contract of hire with HOVIC since he is illiterate and no one orally explained the significance of the forms he signed on May 30, 1984. Second, Cotto submits that he could not have evaluated or

acquiesced to the risks of his employment since he had only worked one full day in his final rehire period.

## A. *Consent*

### 1. *Illiteracy*

In Vanterpool, supra, the Third Circuit held that Vanterpool satisfied the first requirement of two part test by signing the Litwin loanee form. Vanterpool, supra at 126–27. In the case before us it is undisputed that Cotto signed the loanee form. The only issue is whether Cotto can be bound to the legal effect of this act since he is illiterate. We find he can.

A variety of cases support the proposition that an illiterate is bound to instruments they sign. Gaskin v. Stumm Handel GmbH, 390 F. Supp. 361, 366–67 (S.D.N.Y. 1975) (interpreting N.Y. law); Greer v. Kooiker, 253 N.W.2d 133, 140 (Minn. 1977) (a party to a contract on which others have relied cannot avoid the duties of the document by showing they did not know its contents—illiteracy even if present is not a defense). Maw v. McAlister, 166 S.E.2d 203, 205 (S.C. 1969) (the duty on the part of one who signs a written instrument to exercise reasonable care to protect themselves requires that they read the contract which they sign and if they cannot read, that they get someone to read it for them). Merrill, Lynch, Pierce, etc. v. Benton, 467 So. 2d 311, 313 (Fla. Dist. Ct. App. 1985) (persons not capable of reading English are free to elect to bind themselves to contract terms they sign without reading); Aluia v. Harrison Community Hosp., 362 N.W.2d 783, 787 (Mich. App. Ct. 1984) (a person who cannot read the language has a duty to procure someone to read it to them, failure to do so will estop that party from avoiding the contract). Ellis v. Mullen, 238 S.E.2d 187, 189 (N.C. Ct. App. 1977) (it is the general rule that one who signs a contract is presumed to know its contents, and an illiterate person signing an instrument without request that it be read to him is chargeable with negligence for which the law affords no redress).

Further support for this principle is found in Trnka v. Elanco Products Co., A. Dir. Eli Lilly, 709 F.2d 1223 (8th Cir. 1983) (in North Dakota it is the duty of every contracting party to learn and know the contents of an agreement before signing it). Mercury Coal & Coke v. Mannesmann Pipe and Steel, 696 F.2d 315, 318 (4th Cir. 1982) (physical inability to read contract provision no excuse in West Virginia or New York); Jose v. First Pennsylvania Bank, N.A., 648 F.2d 879, 900 (3d Cir.), cert. den. 454 U.S. 893 (1981) (failure to read before signing is no defense to a contractual obligation under

Pennsylvania law). Squires v. Woodbury, 621 P.2d 443, 446 (Kan. Ct. App. 1981) (if a person cannot read an instrument due to poor eyesight it is as much a duty to procure some reliable person to read and explain it before it is signed as it would be to read it before signing, if able to do so). Roberd v. First Federal Savings & Loan Association, 490 S.W.2d 243, 245 (Tex. Civ. App. 1973) (a person unable to read due to blindness is under a legal duty to procure some person to read and explain the document before signing).

■ ■ We will adopt this rule for the Virgin Islands and hold that Cotto is bound to the legal consequences of signing the Litwin loanee form.[1] Since Cotto is unable to avoid the legal effect of this form, we are compelled to follow Vanterpool, supra, and hold that Cotto gave his express consent to work as the borrowed employee of HOVIC.

### 2. *Implied Consent*

■ Alternatively, even assuming arguendo that Cotto did not give his express consent to work as the borrowed employee of HOVIC, his repeated rehirings as a Litwin Type I employee indicates implied consent to work for the borrowing employer.

### B. *Acquiescence*

■ Cotto argues one day's work is insufficient time for him to evaluate and acquiesce to the risks of his employment. We agree. Unfortunately, Cotto has still satisfied the second prong of the Vanterpool test because the final rehire period was not the first occasion he had worked for Litwin at HOVIC. On at least three prior occasions Cotto had worked as a Litwin Type I employee at HOVIC. These prior rehiring periods, combined with the final rehire period, provided ample opportunity for Cotto to evaluate and acquiesce to the risks of his employment.

### C. *Supervision*

Finally, Cotto argues that Vanterpool, and Taylor can be distinguished from the facts before us. In both of these cases the borrowed employee received instructions from a fellow Litwin Type I employee who in turn received his instructions from a HOVIC supervisor. In our case an additional Litwin Type I employee was

---

[1] This is not to say that we would bind an illiterate party to a written document if he was induced to sign the document by fraud or through overreaching conduct on the part of the other party. Since these are not the facts before us, we save this issue for another day.

included in this chain of command, causing Cotto to be twice removed from his HOVIC supervisor.

We do not believe this difference is material enough to distinguish this case from Taylor. We therefore adopt and follow our discussion found in Taylor, supra.

## III.  CONCLUSION

■  In summary we find that Cotto consented to work for HOVIC and evaluated and acquiesced to the risks of his employment. We hold that Cotto is a borrowed employee and HOVIC is immune from suit by him. Summary judgment will enter for HOVIC dismissing the complaint. Cotto's cross motion for summary judgment is denied.

## JUDGMENT

THIS MATTER came before the Court on cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED, ADJUDGED AND DECREED:

THAT defendant's motion for summary judgment be, and the same, is hereby GRANTED and Plaintiff's complaint is DISMISSED with prejudice; and further

THAT Plaintiff's motion for summary judgment be, and the same, is hereby DENIED.